892 So.2d 690 (2005)
David KIMBALL, Individually and as Administrator of the Estate of His Minor Daughter, Jenny Ann Kimball (Deceased)
v.
WAUSAU INSURANCE COMPANIES, Creekwood Mark Twain, II, Ltd., Creekwood Mark Twain II Corp., Tonti Realty Corporation, Tonti, L.L.C.S., Tonti Development Corporation, State of Louisiana, Reliant American Insurance Group, Frank Malinda, Nicolls Limousine Service, Inc. and Parish of Jefferson, Department of Parkways.
David Kimball, Individually and as Administrator of the Estate of His Minor Daughter, Jenny Ann Kimball (Deceased)
v.
East Jefferson Levee District and Parish of Jefferson, Department of Parkways.
Nos. 04-CA-626, 04-CA-627.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 2005.
Rehearing Denied February 16, 2005.
Leonard J. Cline, Metairie, LA, for Plaintiff/Appellant.
Richard L. Olivier, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Plaintiff/appellant David Kimball appeals a judgment of the district court that granted an involuntary dismissal of his suit against the defendant/appellee Parish of Jefferson. The judgment also maintained *691 an Exception of Prescription in favor of the Parish on a subsequent suit filed on the same matter. We affirm.
On February 11, 2001, a tragic automobile accident occurred that took the life of two teenagers, one of whom was Jenny Kimball, the daughter of plaintiff/appellant David Kimball. Lawsuits were filed by the Weaver family, the parents of the other deceased child as well as by Claudia Kimball, mother of Jenny. Claudia and David Kimball are divorced. Various parties were named as defendants, including, among others, the driver of the other vehicle involved, that driver's employer and insurer, Tonti Development Corporation, the Parish of Jefferson, and the State of Louisiana.
On January 11, 2002, David Kimball filed suit individually and as administrator of the estate of Jenny. In that suit, Number 576-157 in the 24th Judicial District Court, Kimball named as defendants the same parties designated in the previously filed lawsuits. However, he did not request service of process on the Parish of Jefferson. On September 5, 2002, the Parish filed a Motion And Order For Involuntary Dismissal of 576-157, averring that Kimball failed to serve it within the ninety-day time period prescribed by La. C.C.P. art. 1672(C). Meanwhile, Kimball filed a second suit in August 2003 against the Parish and the Levee District, Number 597-320, alleging the same damages.
On September 5, 2003, the Parish filed a Peremptory Exception of Prescription in the second suit, contending that it had prescribed. On December 1, 2003, Kimball filed a Motion For Summary Judgment And For Expedited Hearing in the first suit. In that motion, he alleged that the Parish had refused to participate in discovery on the ground that it had never been properly served. Kimball also urged that because the first suit was still pending when the second one was filed, that prescription was continuously interrupted even after the first suit is dismissed. Kimball claimed that because Claudia had filed a suit on behalf of herself and Jenny, that had been timely served on the Parish, Claudia's lawsuit likewise interrupted prescription against the Parish.
A contradictory hearing was held on the Parish's Motion For Involuntary Dismissal and Exception Of Prescription, following which hearing the court took the matter under advisement. In February 2004, the court granted an involuntary dismissal and maintained the exception. In March 2004, Kimball applied for supervisory writs to this court on that judgment.[1] We denied writs, reserving his right to appeal. However, Kimball had already filed a Motion For Devolutive Appeal in April 2004.
Although Kimball assigns as error the granting of the Motion For Involuntary Dismissal in the first suit filed, he has not briefed that portion of the appeal. Accordingly, pursuant to Uniform Rules  Courts of Appeal, Rule 2-12.4, we consider that assignment of error abandoned.
Kimball argues the Exception of Prescription granted in the second suit, contending that under La. R.S. 13:5107(D), prescription is continuously interrupted if, during the pendency of the first unserved suit, a new suit on the same subject matter is filed and timely served. La. R.S. 13:5107(D) reads in applicable part:
D. (1) In all suits in which the state, a state agency, or political subdivision, or any officer or employee thereof is named as a party, service of citation shall be requested within ninety days of the commencement of the action or the filing of a supplemental or amended petition *692 which initially names the state, a state agency, or political subdivision or any officer or employee thereof as a party. This requirement may be expressly waived by the defendant in such action by any written waiver.
(2) If service is not requested by the party filing the action within that period, the action shall be dismissed without prejudice, after contradictory motion as provided in Code of Civil Procedure Article 1672(C), as to the state, state agency, or political subdivision, or any officer or employee thereof, who has not been served.
(3) When the state, a state agency, or a political subdivision, or any officer or employee thereof, is dismissed as a party pursuant to this Section, the filing of the action, even as against other defendants, shall not interrupt or suspend the running of prescription as to the state, state agency, or political subdivision, or any officer or employee thereof; however, the effect of interruption of prescription as to other persons shall continue.
Kimball argues that the statute means that only after the first suit is dismissed does a plaintiff lose his opportunity to cure the defect in service. According to Kimball, prescription is suspended, but not interrupted, during the pendency of the first suit, prior to dismissal; and during this time, a plaintiff may still "act expeditiously" to save the suit from prescription.
Kimball cites a Louisiana Supreme Court case that involved the filing of a medical malpractice suit against a doctor and a medical center.[2] There, plaintiffs had timely filed suit but had not requested service, and in due time, the medical center filed a Motion to Dismiss for failure to request service. On the same day the motion to dismiss was granted, but prior to its being signed, the plaintiffs filed a second suit against the medical center, which in turn filed an exception of prescription. The trial court granted the exception, finding that the first suit was effectively abandoned by non-service and did not serve to interrupt prescription. Later, on remand from the appellate court, the trial court determined that the failure to serve rendered the suit an absolute nullity and is considered never to have occurred. The appellate court found that the first suit, filed within the prescriptive period, interrupted prescription as long as it was pending and therefore, the filing of the second suit before the judgment of dismissal was signed was timely.
The Supreme Court affirmed the appellate court, but as Kimball concedes, the only issue before the court was whether the 90-day service rule was intended, in suits against private litigants, to affect the interruption of prescription, and the exact functioning of section 13:5107(D)(3) before the unserved suit against the state is dismissed was not addressed. Quoting another case,[3] the Supreme Court stated:
We agree with the Jacobs' reasoning that while this statute may not be directly applicable as it involves suits against the state, "[s]ignificantly, when the legislature enacted the statute, it expressly provided that `the effect of interruption of prescription as to other persons shall continue,'" "deliberately confirm[ing] La. Civ.Code art. 3463's `interruption of prescription' effects, as the article pertains to private entities." 815 So.2d at 861. Indeed, had the legislature intended that prescription is not interrupted as *693 to all defendants dismissed because of non-service within 90 days under La. C.C.P. art. 1672(C), the portion of La. R.S. 13:5107 specifying that prescription is not interrupted when the state is dismissed for non-service would be redundant, and the portion of La. R.S. 13:5107 stating that interruption continues against all "other persons," would be nonsensical.[4]
The Bordelon court was concerned with prescription against entities other than the state, distinguishing the specific exception granted to the state in R.S. 13:5107 from prescription applicable against "other persons." Bordelon does not support Kimball's interpretation of R.S. 13:5107 that during the pendency of the first suit, prescription is continuously suspended against the state and that a second suit filed prior to dismissal timely interrupts prescription.
"When a law is clear and unambiguous, and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9.[5] We think the statute is clear, and that the language unambiguously carves out an exception to the general rules of prescription in favor of the state or its political subdivisions. La. R.S. 13:5107, a specific, special statute dealing with service of citation and process upon the state or a political subdivision, supersedes the general statutes (on service and prescription).[6] Because the first suit in the present case was properly dismissed, prescription was never interrupted as to the Parish of Jefferson.
Kimball has also argued that as an intestate heir to Jenny's estate, the survival action filed by Claudia interrupted prescription on his suit against the Parish, regardless of his failure to timely request service. He cites jurisprudence interpreting La. C.C. P. art. 1153, that deal with an amended petition relating back to the filing of an original pleading, which we find inapplicable here. To the extent Kimball argues actual knowledge of the suit on the part of the Parish, it is well-accepted that even a defendant's actual knowledge of a legal action cannot supply the want of citation because proper citation is the foundation of all actions.[7]
Kimball further asserts that his survival action is the same cause of action as that of Claudia, so that her timely filed suit acted to interrupt prescription as to him. Again, the jurisprudence cited by Kimball involves the relation back of an amending petition to add additional plaintiffs. Here, each of the Kimballs has a claim for their own share of the survival damages, and Kimball has filed his own lawsuit for their recovery. His lawsuit does not "relate back" to Claudia's for purposes of prescription. We see nothing in the clear wording of La. R.S. 13:5107(D)(3) which would allow Kimball to link his own survivor action to Claudia's for the purposes of avoiding prescription.
The second petition filed by Kimball has prescribed on its face. For the foregoing reasons, we find no error in the judgment of the trial court dismissing case number 597-320 as prescribed.
*694 The appellate record reveals that Kimball's argument regarding the constitutionality of R.S. 13:5107(D)(3) was not litigated in the lower court and is not properly before us at this time.
AFFIRMED.
NOTES
[1] David Kimball v. Wausau Insurance Companies et al, 04-C-0276.
[2] Bordelon v. Medical Cntr. Of Baton Rouge, 03-C-0202 (La.10/21/03), 858 So.2d 376.
[3] Jacobs v. Louisiana Farm Bureau Insurance Companies, 01-837 (La.App. 3 Cir. 12/19/01), 815 So.2d 858, writ denied XXXX-XXXX (La.3/28/02), 811 So.2d 946.
[4] Bordelon, supra.
[5] Naquin v. Titan Indem. Co., XXXX-XXXX (La.2/21/01), 779 So.2d 704.
[6] See e.g. Lockett v. Reese XXXX-XXXX (La.App. 4 Cir. 4/28/04), 874 So.2d 913; Thomas v. Louisiana Dept. of Public Safety and Corrections, XXXX-XXXX (La.App. 1 Cir. 3/28/03, 848 So.2d 635), writ denied 2003-2397 (La.11/21/03), 860 So.2d 552.
[7] Naquin v. Titan Indem. Co, supra.